AUSA: Adam Sowlati

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 1110** |
| UNITED STATES OF AMERICA<br><br>v.<br><br>OTONIEL RODRIGUEZ,<br>    a/k/a "Tony,"<br><br>                              Defendant. | **COMPLAINT**<br><br>Violations of 21 U.S.C. §§ 841, 846; 18 U.S.C. § 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

  ALEX JOHNSON, being duly sworn, deposes and says that he is a Special Agent with Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Distribute Narcotics)**

  1. From at least in or about February 2023 through at least in or about March 2024, in the Southern District of New York and elsewhere, OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

  2. It was a part and an object of the conspiracy that OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

  3. The controlled substance involved in the offense was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

**COUNT TWO**
**(Possession with Intent to Distribute Narcotics)**

  4. On or about March 13, 2024, in the Southern District of New York and elsewhere, OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

5.      The controlled substance involved in the offense was 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(B); Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.      I am a Special Agent with DEA. I have been a Special Agent with DEA for approximately two years. I have been personally involved in this investigation. This affidavit is based on my involvement in this investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

7.      Since in or about January 2024, law enforcement has been investigating a scheme to send narcotics by mail from California to an apartment (the "Apartment") in a residential building (the "Building") located in Manhattan.

8.      Based on my discussions with Building employees and review of the lease agreement for the Apartment, I know that OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, leases the Apartment along with a co-conspirator ("CC-1").

## Cocaine is Shipped to the Apartment and Retrieved by CC-1

9.      Based on my personal involvement in this investigation, discussions with other law enforcement officers, and review of postal records, I have learned the following:

a.      On or about February 14, 2024, two United States Priority Mail parcels (the "February 14 Parcels") were mailed to the Apartment from a United States Postal Service ("USPS") post office (the "Post Office") located in Valley Village, California. The February 14 Parcels were addressed to variations of CC-1's name (*e.g.*, first initial followed by last name, first name followed by last initial).

b.      On or about February 21, 2024, pursuant to a search warrant authorized by the Honorable Sarah L. Cave, United States Magistrate Judge, law enforcement officers searched the February 14 Parcels.

c.      In the February 14 Parcels, law enforcement officers found, in total, approximately 3.17 kilograms of a white powder that tested positive for the presence of cocaine.

d.      In the last year, at least approximately 108 United States Priority Mail parcels were mailed to the Apartment from the Post Office that are similar in weight and size to the February 14 Parcels.

    e. On or about February 6, 2024, two parcels were mailed from the Post Office to the Apartment: one of the parcels was addressed to CC-1; the shipping label for the other parcel is not available. On or about February 7, 2024, two parcels were mailed from the Post Office to the Apartment addressed to variations of CC-1's name. Collectively, these four parcels are referred to herein as the "February 6/7 Parcels."

    f. The February 6/7 Parcels were delivered to the Building's mail room on or about February 9, 2024, and February 10, 2024.

  10. Based on my review of surveillance footage from the Building, review of a DMV photograph of CC-1, and personal participation in this investigation, I have learned the following about events that occurred on or about February 10, 2024:

    a. At approximately 8:29 p.m., a person who appeared to be CC-1 picked up the February 6/7 Parcels from the mailroom of the Building along with a fifth package (the "Fifth Package"). The February 6/7 Parcels appeared be similar in shape and size to the February 14 Parcels.

    b. CC-1 then met an unidentified person ("Individual-1") near the elevator bank of the Building. CC-1 gave Individual-1 two of the February 6/7 Parcels along with the Fifth Package.

    c. CC-1 and Individual-1 then entered the elevator and went to the 33rd floor (where the Apartment is located). As they exited the elevator, CC-1 and Individual-1 walked in the direction of the Apartment, carrying the February 6/7 Parcels (and the Fifth Package).

  11. Based on my review of postal records and my discussions with law enforcement officers who have reviewed the labels of two additional parcels (the "March 9 Parcels"), I know that, on or about March 9, 2024, the March 9 Parcels were mailed from the Post Office to the Apartment: one of the parcels was addressed to a variation of CC-1's name and weighed approximately 4 pounds; the other parcel was addressed to another variation of CC-1's name and weighed approximately 3 pounds.

  12. Based on my discussions with other law enforcement officers involved in this investigation, I have learned the following:

    a. On or about March 12, 2024, at approximately 11:15 a.m., a narcotics-detection canine[1] ("Canine-1"), accompanied by a New York City Police Department ("NYPD")

---

[1] Canine-1 is a German Shepard/Belgian Malinois mix who was originally certified as a narcotics-detection canine in or about May 2019 by the New York State Municipal Police Training Council. Canine-1 was certified to detect the odors of cocaine, heroin, ecstasy, and methamphetamines, as well as their derivatives. Since 2019, Canine-1 has received significant additional training in narcotics detection, and has been regularly and successfully used by law enforcement to detect narcotics, including during the inspection of packages, suitcases, automobiles, and residences. Before Canine-1 was first certified, and during the training that he has received since then, he has been exposed to numerous different objects, some of which have contained narcotics, and others of which have not. Canine-1 has been trained to differentiate between those categories of objects,

officer ("Officer-1"), who is a certified handler of narcotics-detection canines, approached the March 9 Parcels, which had been removed from mail circulation prior to their delivery to the Apartment. Canine-1 reacted to the March 9 Parcels by sitting down in front of the March 9 Parcels. Officer-1 said that this behavior is consistent with a positive indication or alert for narcotics odors, which suggests that narcotics or narcotics residue were contained inside the March 9 Parcels.

       b.    On or about March 12, 2024, at approximately 12:19 p.m., law enforcement officers, impersonating postal delivery workers, delivered the March 9 Parcels to the mail room of the Building.

    13.    Based on my review of surveillance footage from the Building, review of a DMV photograph of CC-1 and personal participation in this investigation, I have learned the following about events that occurred on or about March 12, 2024:

       a.    At approximately 10:11 p.m., a person who appeared to be CC-1 picked up the March 9 Parcels from the mailroom of the Building.

       b.    CC-1 then walked to the elevator, carrying the March 9 Parcels. He exited the elevator at the 33rd floor and walked in the direction of the Apartment.

### The Search of the Apartment and Arrest of CC-1

    14.    Based on my personal involvement in this investigation and the post-arrest interview of CC-1, I have learned the following about events that occurred on or about March 13, 2024:

       a.    At approximately 7:12 p.m., pursuant to a search warrant (the "Search Warrant") authorized by the Honorable Stewart D. Aaron, United States Magistrate Judge, I and other law enforcement officers searched the Apartment. Based on that search, I have learned the following:

           i.    The Apartment is a two-bedroom apartment (consisting of a "First Bedroom" and "Second Bedroom"). Law enforcement did not locate any narcotics or narcotics-related paraphernalia in the Second Bedroom.

           ii.    The First Bedroom has two closets—a large closet (the "Large Closet") and a small closet (the "Small Closet"). Law enforcement did not uncover any narcotics or narcotics-related paraphernalia in the Large Closet. In the Small Closet, however, law enforcement officers found, among other things, the following:

                1.    Four parcels—the two March 9 Parcels and two parcels (the "Unlabeled Parcels") without shipping labels. The March 9 Parcels were sealed; the packing tape was intact. Inside of the March 9 Parcels, I found books in vacuum sealed bags. Inside the Unlabeled Parcels, I found approximately 2.25 kilograms of a white powder in vacuum sealed bags

---

and to give his law enforcement handlers a positive indication (*i.e.*, to "alert") if he detects narcotics odors. Canine-1 has generally proven reliable in the field.

that tested positive for cocaine. A photograph of the cocaine retrieved from the Unlabeled Parcels is below:



        2.        Inside a safe, at least approximately $20,000 in cash.

        3.        A money counter and a vacuum sealer.

        4.        A shopping bag with a label that had a variation of CC-1's name.

### RODRIGUEZ Ships Cocaine to New York

        b.        Upon entering the Apartment to execute the Search Warrant, I and other law enforcement officers placed CC-1, who was alone in the Apartment, under arrest. After being informed of his *Miranda* rights, CC-1 said, in sum and substance, the following:

        i.        OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, primarily lives in California but also rents the Apartment with CC-1. CC-1's room is the Second Bedroom; RODRIGUEZ's room is the First Bedroom. CC-1 utilizes the Large Closet to store his clothing; he will also occasionally utilize the Small Closet.

        ii.        On numerous prior occasions, RODRIGUEZ sent CC-1 packages and instructed CC-1 to place the packages in the Small Closet. CC-1 said he did not know definitively what was in the packages and never asked RODRIGUEZ about their contents, but assumed the packages had drugs in them. CC-1 knew, however, that RODRIGUEZ sold and used narcotics.

        15.        Based on my personal involvement in this investigation, discussions with other law enforcement officers, and review of postal records, I have learned the following:

        a.        On or about March 12, 2024, two United States Priority Mail parcels (the "March 12 Parcels") were mailed to the Apartment from the Post Office. The March 12 Parcels were addressed to variations of CC-1's name.

    b.  On or about March 15, 2024, at approximately 11:30 a.m., pursuant to a search warrant authorized by Judge Aaron, law enforcement officers searched the March 12 Parcels.

    c.  In the March 12 Parcels, law enforcement found, in total, approximately 3 kilograms of a white powder that tested positive for the presence of cocaine.

  16.  Based on my personal involvement in this investigation, review of court filings, and interviews of CC-1, I have learned the following:

    a.  On or about March 14, 2024, CC-1 was charged with narcotics trafficking in a complaint authorized by Judge Aaron.

    b.  Since his arrest, CC-1 has provided information to and worked with law enforcement with the hope of obtaining leniency.  As described below, the information provided by CC-1 to date has been corroborated by other evidence.

    c.  After first denying he knew definitively what was in the packages sent to him by OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, CC-1 acknowledged that he knew that there were drugs in the packages.

    d.  CC-1 explained that, among other things, to communicate with RODRIGUEZ, CC-1 and RODRIGUEZ used cellphones, occasionally including encrypted messaging applications.  RODRIGUEZ used a particular cellphone number, both for general cellphone communications and in connection with those encrypted messaging applications (the "Rodriguez Cellphone").

  17.  Pursuant to the Search Warrant, I seized CC-1's cellphone (the "CC-1 Cellphone"), which was on his person at the time of his arrest.  Based on my review of text message exchanges with the Rodriguez Cellphone stored in the CC-1 Cellphone, I have learned, among other things, the following:

    a.  In or about 2019, CC-1 asked to obtain narcotics from OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant.

    b.  On or about September 15, 2023, CC-1 had the following exchange with RODRIGUEZ:

6



    c. Based on my training and experience, I know that a snow emoji is commonly used by narcotics traffickers or users of narcotics to refer to cocaine.

    d. On or about March 12, 2024, the day that CC-1 picked up the March 9 Parcels (which, as noted above, were filled with books in vacuum sealed bags), using an encrypted application, CC-1 wrote RODRIGUEZ, in sum and in substance, "Just got home . . . Picked them up / All good." RODRIGUEZ then replied, in sum and in substance, "They looked fine nothing open or nada." CC-1 responded, in sum and substance, "all good." RODRIGUEZ replied by indicating he "loved" CC-1's "all good" comment.

    e. On or about March 15, 2024, at approximately 5:20 p.m., using an encrypted application, and at the direction of law enforcement, after telling RODRIGUEZ that CC-1 believed the contents of the March 12 Parcels were missing, CC-1 had the following exchange with RODRIGUEZ (the blue is from CC-1, the grey is from RODRIGUEZ):

7



18.     Based on my personal participation in the arrest of OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, I have learned the following:

a.     On or about March 15, 2024, at approximately 10:07 p.m., law enforcement officers arrested RODRIGUEZ at John F. Kennedy International Airport.

b.     Incident to RODRIGUEZ's arrest, law enforcement seized the Rodriguez Cellphone from RODRIGUEZ's person.

c.     At approximately 11:04 p.m., I called the Rodriguez Cellphone and observed that the screen of the Rodriguez Cellphone showed an incoming call from my phone number.

d.     During post-arrest processing, RODRIGUEZ told me that his cellphone number was the same cellphone number provided by CC-1 for the Rodriguez Cellphone.

8

19. Based on my personal participation in the arrest of OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, discussions with other law enforcement officers, and review of postal records, I have learned the following:

a. The February 14 Parcels were shipped from a self-service kiosk at the Post Office that takes a photograph of the user of the kiosk at approximately the moment the user scans and deposits a package into the kiosk. A photograph was taken of the sender of the February 14 Parcels, which is reproduced below:



b. At the time of his arrest, RODRIGUEZ had a hat (the "Hat") attached to a loop in his backpack that has the same distinctive red symbol as the hat worn by the sender of the February 14 Parcels. A photograph of the Hat is reproduced below:



9

WHEREFORE, I respectfully request that OTONIEL RODRIGUEZ, a/k/a "Tony," the defendant, be imprisoned or bailed, as the case may be.

/s/ Alex Johnson, by SDA with permission
_____
ALEX JOHNSON
Special Agent
Drug Enforcement Administration

Sworn to before me by reliable electronic means
this 16th day of March, 2024

_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York